Thank you. May it please the court, I'm gonna watch the time and try to reserve about five minutes for rebuttal. My client Nick Mennick was convicted in June of 2004 of aggravated battery in state court in Boise, Idaho. There's little doubt of Mr. Mennick's guilt in this case. At trial there was overwhelming evidence of his guilt. The victim in this in this case suffered broken bones, was rendered unconscious. Mr. Mennick delivered blows that a reasonable person would infer would cause a traumatic injury and there was essentially uncontradicted eyewitness testimony to corroborate that. Mr. Mennick represented himself prior to trial and during the first portion of his trial and then standby counsel stepped in to assist him with the latter half of his trial. During the pretrial phase he filed multiple handwritten pro se motions nearly all of which were without merit on their face, requested things that the and you can detect a sense of frustration from the court in these handwritten pro se motions coming in and the court having to deal with him. However, in one of those he did raise an issue with merit, with serious merit. Mr. Mennick requested that the state assist him in obtaining medical expert to review the medical records that we used to trial against him specifically cat scans. Mr. Mennick in artfully admittedly did express to the court that he didn't he would not be able to interpret cat scans that he couldn't read medical images that that he couldn't interpret those things and that he needed assistance in doing so. The argument here is that notwithstanding the other evidence presented against him the most serious evidence that is the evidence of the most serious injuries suffered by the victim brain damage the most serious evidence against Mr. Mennick he was defenseless against he could not interpret this evidence that was introduced against him and he did raise the issue he did request the state's assistant that the trial court essentially did not consider his request did not. The state court said in our view there would have been little value in an expert services and virtually no risk of error in the outcome of Mennick's trial resulting from the denial of his request is that an unreasonable application of ACCE? Yes. And why? ACCE and I don't know how to pronounce ACCE or ACCE I'm not sure I'll go with the court's pronunciation. ACCE states that a indigent defendant should be provided basic tools to to to be able to mount a defense and that expert assistance can be used for the evaluation preparation and presentation of evidence at trial. It doesn't require that the outcome have been changed. Evidence is used for more than than just guilt or innocence. He was sentenced in this in this case he received an exceptionally harsh sentence. If he were able to prove that that the most serious injuries actually did not exist that he might receive a less extreme sentence. On the assumption that it was error by the state court not to give him the medical expert as I read the later decisions by the state court we've got a holding that it was in any event harmless. How would you respond to that? First off I assume that harmless error does come under AEDPA and a basically the reasonableness test. Why was it not harmless? Assuming it was an error. The Mr. Manick asserts that the decision not to consider his request for medical expert that decision was wrong. The the harmless evaluation whether or not was harmless it begs the same question as the original decision not to become an expert and that is that this case is so strong against you why fight it? And there's not there's not a an overwhelming guilt exception to not providing the expert. The the outcome may well have been the same in terms of of guilt of his guilt being established at trial. Maybe let me ask it this way I there's a lot of evidence of injury including head injury. Let's assume the MRI comes up and shows that you know there's no lesion in the brain as a result of it. Any difference in terms of the outcome in the case? I have to concede that in terms of guilt or innocence that that is a long shot because the... So what difference does it make? That the decision on the trial court was wrong and that I'm here on Mr. Manick's behalf to assert that when he wasn't given serious consideration by the trial court, the trial court made a mistake and that the trial court was wrong. I understand I'm trying to figure out what difference the mistake made. Sorry what's that? I'm trying to figure out what difference the mistake made. I it could make a difference in sentencing in terms of if if the injuries weren't as extensive as as it first appeared at trial he might have received a less extreme sentence. He did receive a very extreme sentence and it in terms of trial strategy it could have made a difference. Thank you. In terms of the application of AICHI, obviously Mr. Manick's argument requires that that this court look at AICHI, the wording of AICHI, the holding of AICHI exclusively and and look at that that decision. The language in AICHI, Mr. Manick asserts, does not restrict restrict the appointment of an expert at state expense to only psychiatric experts and the language, the rationale behind it is is on its face applicable to more than just psychiatric experts. That the the holding... The state court assumed in its decision that AICHI or AICHI, whatever it was, applicable and the basis decision on that premise. Yes and... I don't think if we're reviewing the state court decision you really have to argue particularly whether it's applicable. The basis of the court decision was even if applicable the sufficient showing of that it could affect the verdict. And Mr. Manick's response to that is that it makes the same assumption as the contains the same incorrect reasoning as the original ruling by the trial court. That is that that you're guilty. Why are you raising this issue? There's overwhelming evidence of your guilt. This trial will be... Well that's right. It says that there is overwhelming evidence of guilt and therefore any error would not be likely to affect the verdict. Which is pretty much what AICHI says when it in its decision it's it says we inquire into the probable value of the medical assistance sought in marital psychiatry and the risk of error in the proceeding if such assistance is not offered. So it is suggesting it doesn't matter whether it affects the verdict. I think that that interpretation what that results in is an overwhelming guilt exception to providing an expert. Well it's not much different from the general rule about harmless error. That an error that doesn't affect the outcome is not a reversible error. Well the yes I understand and I guess Mr. Manick would in that case if that were true would be asking for a ruling that the AICHI should have applied but then that the the outcome would not have been different. I think your time seems to be up. I don't know whether that's your ten minutes or your five minutes. That's the whole ten. Thank you. May it please the court. There are four basis for affirming the magistrate's decision in this case. The first is of course the opening brief of the appellant did not address the rationale of the magistrate in his opening brief. The second is the Teague analysis. The third is 2254 D1 of the ADPA and of course the last is harmless error. My focus today is what was the legal landscape at the time that the Idaho Court of Appeals made its decision because the legal landscape is the determination for both the Teague analysis and the 2254 D1 analysis. At that time of course we did have AICHI. But AICHI was a very narrow holding as recognized by Chief Justice Marshall in the Caldwell case when admittedly in a footnote Chief Justice Marshall stated Chief Justice Marshall has been dead for a long time. Excuse me, in the Caldwell case your honor. It's a different Marshall. I said Chief Justice. I'm sorry. Yes, you're right. Justice Marshall. I shouldn't tease. I'm sorry. I'm sorry Justice Fletcher. It was Justice Marshall. He would have been a good chief. Yes. But of course in the Caldwell decision Justice Marshall indicated that the question of whether AICHI was going to be extended to non-psychiatric experts was an open question. That they weren't going to decide it in that particular case. But in this particular case the court assumed that AICHI applied and then conducted the analysis with that assumption. And that is absolutely correct Judge Rawlinson. But as far as Teague analysis at least and I would submit 2254 D1 analysis it doesn't matter what the state court whether the state court assumed the application of AICHI because the underlying premise at least in 2254 D1 is that you have to have a non-psychiatric expert. You have to have Supreme Court precedent before the state court's decision can be an unreasonable application. But we're looking at that decision and that's part of the background of that decision that the court assumed that AICHI applied and then said even if it applies there would have been no relief because it wouldn't have changed the outcome. So our duty is to determine whether or not that was an unreasonable application of AICHI. And again I think you're making it more complicated than it has to be. Well I'm not trying to because of course our ultimate position is that the Court of Appeals decision was a reasonable application of AICHI if it does in fact apply. But I like to take these things incrementally and of course Teague is a threshold question that is supposed to be addressed first. Then we get to 2254 D1 and was there Supreme Court precedent. Upon which the Court of Appeals could rely and then if there was Supreme Court precedent was this Court of Appeals decision a reasonable application of that precedent. I don't believe that we have either from the Supreme Court or this court a decision where a state court has assumed that a Supreme Court precedent for purposes of 2254 D1 applies and then gone ahead and said we're going to apply. Well you know that the Supreme Court decision doesn't have to be on all fours with the situation in order for it to apply. So it was not unreasonable for the state court to assume that AICHI applied and analyze it from there. Why was that unreasonable for the court to do? It wasn't unreasonable at all Your Honor. And certainly the court did that. But when you look at Caldwell and then you look at Justice Marshall's dissent in Johnson where the dissent on the grant of cert. He specifically said that this was an open question. We need to address it. And I would think that Justice Marshall would have known what he meant in Caldwell when he wrote that. But Your Honor you're absolutely correct that you can make a determination that the Idaho Court of Appeals properly assumed that AICHI applied and then that the application of AICHI was certainly objectively reasonable under ADEPA. There's simply no reason though to really go that far if we don't have to. How far? Do you think we ought to resolve the constitutional question? Not at all Your Honor. I guess what I'm saying is that there's no need to go to the next step of determining whether the Court of Appeals application of AICHI was objectively reasonable under ADEPA. As opposed to first determining whether AICHI even applies in a non-psychiatric context. So you're asking us to decide a question on habeas that the state court didn't address? I think this court can do that, yes. Should we? It's kind of a chicken and egg thing, Your Honor. You can do it. You don't have to do it. Because the Court of Appeals decision was an objectively reasonable interpretation or application I should say of AICHI. Should you? And that's the question on habeas review. That's our charge on habeas review to determine if the state court decision was an unreasonable application of Supreme Court law. So why should we go beyond our charge in this case? Because it's of Supreme Court law. I agree exactly with you, Your Honor. Of Supreme Court law. And the question is, or my position is, there is no Supreme Court law. Therefore, the Idaho Court of Appeals decision cannot possibly be an objectively unreasonable application of Supreme Court law. All right. Do you need any more time? No, I don't, Your Honor. We'd ask that the court affirm. Thank you. Thank you. You have no more time. You have no more time, right? Yes, Your Honor.
judges: Reinhardt, Fletcher W. , Rawlinson